UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| SUEZANNE BRADFIELD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 3:13-cv-00121-SEB-WGH |
| | ) | |
| MEETINGS & EVENTS | ) | |
| INTERNATIONAL, INC., | ) | |
| | ) | |
| Defendant. | | |

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT AS TO
PLAINTIFF'S CLAIM OF AGE DISCRIMATION AND
DENYING PLAINTIFF'S AND DEFENDANT'S CROSS-MOTIONS FOR
PARTIAL SUMMARY JUDGMENT AS TO RETALIATION**

Plaintiff, Suezanne Bradfield, ("Ms. Bradfield") has brought this action against her

former employer, Defendant, Meetings & Events International, Inc. ("MEI"), alleging that

MEI discriminated against her and later retaliated against her, in violation of the Age

Discrimination and Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.*   [Dkt. No. 1.]

This cause is before the Court on cross motions for summary judgment:   MEI's Motion

for Summary Judgment on Ms. Bradfield's original Complaint of Age Discrimination, filed

on June 23, 2014 [Dkt. nos. 28, 29]; MEI's Motion for Partial Summary Judgment on Count

II of Plaintiff's Amended Complaint, filed on November 07, 2014 [Dkt. nos. 54, 55]; and

Ms. Bradfield's Cross-Motion for Partial Summary Judgment on Count II of her Amended

Complaint, filed on December 15, 2014 [Dkt. no. 57].

## <u>BACKGROUND</u>

Ms. Bradfield, was employed by MEI as a clerk and coordinator in 1995 to assist MEI in its event planning business. MEI, which primarily serves the pharmaceutical industry and medical field, has offices employing approximately 90 individuals in Evansville, Indiana as well as approximately 30 employees based in Chicago, Illinois. Within three months of being hired, Ms. Bradfield was transferred to the accounting department where she stayed throughout the duration of her employment. Thirteen years later, in December 2008, MEI's owner and CEO, Teresa Hall-Lima ("Ms. Hall-Lima"), transferred Ms. Bradfield to the position of Assistant Vice President of Financial Services (Hall-Lima Dep. at 80-81).

Ms. Bradfield was sixty-one (61) years of age at the time of her termination of employment (Bradfield Dep. at 4) and she had worked continuously for MEI for more than seventeen years when she was discharged in 2012. MEI claims that the discharge was pursuant to a reduction in force (RIF) in which several employees of varying ages were terminated as part of a plan to decrease expenses and thereby increase net income for the company. MEI references various measures it undertook in early 2012 to decrease expenses, including the deferral of facility lease payments and the elimination of base salary payments for three of its highest-earning employees. However, MEI asserts, these measures were insufficient to accomplish the necessary cutbacks, requiring the company

to further reduce the staff salaries in order to remain profitable in fiscal year 2012, (the fiscal year mirrors the calendar year.)

Ms. Bradfield claims that MEI's decision to terminate her employment was based on her age and as such, that decision to let her go was discriminatory. Her responsibilities leading up to and following her termination were transferred to substantially younger staff, which created a mini-RIF. MEI CEO Ms. Hall-Lima in her May 19, 2014 deposition explained that Plaintiff was not returned to work though many other employees had also been terminated in July 2012 were, which Ms. Bradfield cites as evidence of retaliation after not being rehired following the filing of this lawsuit.

The facts that follow are recounted in the light most favorable to the respective non-movant. Additional relevant facts round out the Analysis below.

## PROCEDURAL HISTORY

On August 27, 2012, Ms. Bradfield filed her first Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) for age discrimination, for which she received a notice of right to sue MEI, allowing her to timely file a Complaint [Dkt. No. 1] on May 22, 2013, against MEI for age discrimination. On May 19, 2014, MEI owner and CEO, Ms. Hall-Lima, was deposed regarding the pending lawsuit. Ms. Bradfield then filed an Amended Complaint on August 12, 2014.

Presently before the Court are several motions: MEI's original Motion for

Summary Judgment directed towards Ms. Bradfield's original Complaint of Age Discrimination, [Dkt. nos. 28, 29]; MEI's subsequent Motion for Partial Summary Judgment on Count II of Plaintiff's Amended Complaint, which was filed after Ms. Bradfield amended her Complaint to include a retaliation charge. [Dkt. Nos. 54, 55]. Ms. Bradfield's Cross-Motion for Partial Summary Judgment on Count II of Plaintiff's Amended Complaint pertains solely to her retaliation claim. [Dkt. No. 57].

## LEGAL STANDARD AND ANALYSIS

### I.    Summary Judgment

Summary judgment is appropriate when the record establishes that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Disputes concerning material facts are deemed genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the Court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. *Id.* at 255. However, neither the "mere existence of some alleged factual dispute between the parties," *id.* at 247, nor the existence of "some metaphysical doubt as to the material facts,"

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986), will defeat a motion for summary judgment. *Michas v. Health Cost Controls of Illinois, Inc.,* 209 F.3d 687, 692 (7th Cir. 2000).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of (the record) which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. The party seeking summary judgment on a claim on which the non-moving party bears the burden of proof at trial may discharge its burden by showing an absence of evidence to support the non-moving party's case. *Id.* at 325.

Summary judgment is not a substitute for a trial on the merits, nor is it a vehicle for resolving factual disputes. *Waldridge v. Am. Hoechst Corp.,* 24 F.3d 918, 920 (7th Cir. 1994). Thus, after drawing all reasonable inferences from the facts in favor of the non-movant, if genuine doubts remain and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate. (*See Shields Enter., Inc. v. First Chicago Corp.,* 975 F.2d 1290, 1294 (7th Cir. 1992); *Wolf v. City of Fitchburg*, 870 F.2d 1327, 1330 (7th Cir. 1989)). But if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish his case, summary judgment is not only appropriate, but mandated. (*See Celotex*, 477 U.S. at 322; *Ziliak v. AstraZeneca LP*, 324 F.3d 518, 520 (7th Cir. 2003)). Further, a failure to prove one essential element "necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

As is the case with regard to the retaliation claim addressed below, courts often confront cross-motions for summary judgment because Rules 56 (a) and (b) of the Federal Rules of Civil Procedure allow both plaintiffs and defendants to move for such relief. (*See also Davis v. Time Warner Cable of Southeastern Wisconsin, L.P.,* 651 F.3d 664, 671 (7th Cir.2011)). "Cross-motions for summary judgment do not automatically mean that all questions of material fact have been resolved." *Lebamoff Enterprises, Inc. v. Huskey*, 666 F.3d 455 (7th Cir. 2012) (citing *Franklin v. City of Evanston,* 384 F.3d 838, 842 (7th Cir.2004)). The Court must evaluate each motion independently, making all reasonable inferences in favor of the nonmoving party with respect to each motion. *Williamson v. Ind. Univ.*, 345 F.3d 459, 462 (7th Cir.2003).

Thus, in determining whether genuine and material factual disputes exist in this case, we have considered the parties' respective memoranda and the exhibits attached thereto, and have construed all facts and drawn all reasonable inferences therefrom in the light most favorable to the respective non-movant. *Matsushita,* 475 U.S. at 574.

**A. Age Discrimination Claim:**

Ms. Bradfield claims that she was discharged from her employment with MEI due to her advanced age (61 years). The ADEA prohibits employers from, among other things, "discharg(ing) any individual ... because of such individual's age." *Van Antwerp v. City of Peoria, Ill.*, 627 F.3d 295, 297 (7th Cir.2010) (quoting 29 U.S.C. § 623(a)(1)).

In order to survive a motion for summary judgment, a plaintiff in a discrimination case need not "produce the equivalent of an admission of guilt by the defendant." *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 737 (7th Cir.1994). Instead, to establish a violation of the ADEA, an employee must show that age "played a role in the employer's decision-making process and had a determinative influence on the outcome." *Id.* (citing *Schuster v. Lucent Techs., Inc.*, 327 F.3d 569, 573 (7th Cir.2003)). An employee may make this showing using either the direct or indirect method of proof. *Id.*

Ms. Bradfield does not claim to have direct evidence of discrimination by MEI. Instead, she has elected to proceed under the familiar indirect method set forth in *McDonnell Douglas*. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). This method requires Ms. Bradfield to establish a *prima facie* case of discrimination by showing that: (1) she is a member of the protected class; (2) she was performing well enough to meet her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) similarly situated, substantially younger employees were treated more favorably. *Naik v. Boehringer Ingelheim Pharmaceuticals, Inc.,* 627 F.3d 596, 599–600 (7th Cir. 2010) (citing *Hildebrandt v. Illinois Dep't of Natural Res.,* 347 F.3d 1014, 1030 (7th Cir. 2003)).

Ms. Bradfield supports her *prima facie* showing of age-related discrimination by noting that, at the age of 61 years at the time of the reduction in force (RIF), she was a member of a protected class. [Dkt. No. 1]. There is no disagreement between the parties

regarding her performance at that time: Ms. Bradfield was meeting MEI's legitimate employment expectations. Nor does MEI dispute that Ms. Bradfield suffered an adverse action—her job loss—as a result of the July 2012 RIF. However, the parties are in decided disagreement over the fourth prong of the *prima facie* elements.

MEI relies upon the traditional RIF analysis to show that Ms. Bradfield was not the victim of age discrimination, noting that Ms. Bradfield has been unable to "demonstrate that the remaining employees in her department were similarly situated to her" and that Ms. Bradfield was unable to "remember a single condition or requirement placed upon her that was less favorable than those placed upon Ms. Murphy, Ms. Zimmer, or Ms. Rivera … [nor] remember a single way in which Ms. Murphy, Ms. Zimmer, or Ms. Rivera were treated more favorably" than she. Def.'s Brief at 15-16. MEI further argues "that simply because a younger employee was retained in a reduction in force while an older employee was discharged is not enough to create an inference of age discrimination." *Id.* at 14. MEI suggests that since Ms. Bradfield lacks any evidence that her treatment was "less favorable than … Ms. Murphy, Ms. Zimmer, or Ms. Rivera," her claim necessarily fails. *Id.* These facts as cited by MEI are for the most part not relevant, however, since they do not apply in circumstances where a terminated employee's responsibilities are reallocated among remaining staff following a RIF. As discussed in greater detail below, Ms. Bradfield has proffered sufficient facts to illustrate that her circumstances were more akin to a mini-RIF than to a regular RIF.

In this case, Ms. Bradfield's check processing and report writing responsibilities were transferred to other MEI employees, thereby creating "a 'mini-RIF,' where a discharged employee's duties are absorbed by other existing staff." See *Bellaver v. Quanex Corp.,* 200 F.3d 485, 493-95 (7th Cir.2000); *Paluck v. Gooding Rubber Co.*, 221 F.3d 1003, 1011-12 & n. 5 (7th Cir.2000). In such circumstances, the fourth prong of Ms. Bradfield's *prima facie* case is satisfied only if she is able to demonstrate "that her duties were absorbed by persons not in the protected class." *Merillat v. Metal Spinners, Inc.*, 470 F.3d 685, 689 (7th Cir. 2006). Ms. Bradfield asks us to view the situation as if her job were not actually eliminated, but instead her duties were dispersed among retained employees.

Ms. Bradfield contends that MEI systematically shifted her responsibilities to younger members of her team. In support of this contention, she describes that in the months leading up to her termination, she was asked to train younger members of the team, such as Ms. Murphy, Ms. Zimmer, and Ms. Rivera in processing checks and running fiscal reports, all functions she had performed during her employment with MEI. Bradfield Dep. at 54. Ms. Zimmer, she recalls, did not "know how to make a deposit ticket," for example, and had to be shown all of the accounting procedures due to her background in auditing rather than accounting. *Id*. at 66. By the time of the mini-RIF, Ms. Bradfield asserts that all of her responsibilities had been transferred to the younger members of the finance team.

In response, MEI notes that "at the time of her termination, Bradfield's duties were primarily to print checks using QuickBooks and to perform some operational accounting," Def.'s Brief at 10, ¶ 44. MEI also describes the various qualifications of each of the team members in order to shed light on why each member was retained over Ms. Bradfield. Ms. Murphy was forty-five (45) years of age[1] at the time of Ms. Bradfield's termination. Hall-Lima Dep. at Ex. 1. MEI maintains that she "was not selected for termination in the reduction in force because she had the ability to handle Access queries and work in other databases utilized by MEI." *Id.* at ¶ 51. Ms. Zimmer was in her twenties at the time of the mini-RIF, and MEI explains that she was not selected for termination "because she was a licensed CPA who had different responsibilities that Bradfield would not have been able to assume." *Id.* at ¶ 52. At the time Ms. Bradfield was terminated, Ms. Rivera was twenty-three (23) years of age; according to MEI, she was not selected for termination in 2012 because she was hired for the Chicago office. *Id.* at ¶ 53. Ms. Hall-Lima lives in Chicago,

---

1 While Ms. Murphy was forty-five (45) years of age at the time of the mini-RIF, she is considered "substantially younger" than Ms. Bradfield under the ADEA and therefore, for the purposes of this analysis, treated exactly as the other younger members of the fiscal team. *Balderston v. Fairbanks Morse Engine Div. of Coltec Industries*, 328 F.3d 309, 321-22 (7th Cir. 2003), *as amended* (May 22, 2003) ("In the age discrimination context, the fact that a plaintiff is replaced by someone 'substantially younger' is a reliable indicator of age discrimination."). "The Seventh Circuit has defined 'substantially younger' as generally ten years younger." *Id.; see also Tubergen v. St. Vincent Hosp. & Health Care Ctr.*, 517 F.3d 470, 475 n. 4 (7th Cir.2008). "Under the ADEA, in the case of younger employees that fall above the age of forty, the age difference must be ten years or greater in order to be presumptively substantial." *Martino v. MCI Communications Services., Inc.*, 574 F.3d 447, 452 (7th Cir. 2009); *see also Wells v. EMF Corp.*, 757 F. Supp. 2d 791, 801 (N.D. Ind. 2010).

and MEI reports that the financial operations were being moved to the Chicago office so Mr. McDowell could oversee those staff members in person. *Id.* MEI contends that "Ms. Rivera was able to perform the same operational accounting that Bradfield performed, but because she was located in Chicago, it was more appropriate that she perform the operational accounting than Bradfield." *Id.*

All of these facts may be persuasive in the context of a RIF; however, a mini-RIF analysis places less importance on the comparability of similarly-situated employees, their performance or supervisors, and more importance on whether portions of their work were in fact absorbed instead of eliminated. Thus, MEI's reasoning tends to support, rather than to discredit, Ms. Bradfield's assertions that she trained the staff who ultimately assumed her check processing and operational accounting functions.

These facts considered in a light most favorable to Ms. Bradfield satisfy the elements of her *prima facie* case for age discrimination. The burden thus shifts to MEI to offer a legitimate, nondiscriminatory reason for Ms. Bradfield's termination. *Everroad v. Scott Truck Sys., Inc.,* 604 F.3d 471, 477 (7th Cir. 2010).

MEI contends that the staff changes were attributable entirely to significant financial challenges that MEI began to experience in 2012 in part due to the passage of the Patient Protection and Affordable Care Act (PPACA) in 2010, which caused waves of uncertainty and turmoil within the medical provider and pharmaceutical industries that MEI serves. Def.'s Br. at 17. The uncertainties regarding the scheduling of future meetings and

training programs and the financial support from pharmaceutical companies for medical provider education and entertainment, which comprised MEI's main source of revenue, created sufficient concerns that MEI was motivated to undertake cost-saving measures beginning around late February and early March 2012.

Among the cost-saving measures was the discontinued salary draws by the three family members employed by the corporation: Ms. Hall-Lima, CEO, her sister, and her husband, Mr. Michael Lima. Hall-Lima Dep. at 46. The company's only maintenance worker, Mr. Josef Senger, was discharged also as a way to reduce costs. *Id.* at 53-54. And the rent owed to the holding company, which leased the office facility to MEI, was deferred to a later date by mutual agreement. *Id.* at 46. MEI submits that Ms. Hall-Lima's review of the March 2012 fiscal report convinced her that additional cost saving measures might be needed. *Id.* at 48-51. When in June 2012 the company's financial situation showed a $240,000 cumulative loss, MEI's corporate leadership decided it needed to further reduce salary costs by eliminating staff. Def.'s Br. at 17. This cumulative loss was higher than that experienced in 2011 ($77,000 loss); in 2010, the company, by contrast, had earned a profit by the same point in the fiscal year ($400,000 profit). *Id.*

Two other factors are cited by MEI as drivers of the reduction in staff: First, MEI had entered into a new relationship with a bank which managed its line of credit, which was "critical for MEI's ongoing operations." *Id.* Second, there was an actual decline in the "number of purchase orders by the end of April, 2012, and (MEI) had forecast an

expected decline of nearly thirty-five percent (35%) of its revenues over the prior calendar year." *Id.* The drop in purchase orders, MEI argues, was the "canary in the mine" in signaling the anticipated drop in revenues later in the fiscal year. *Id.*

MEI argues that it faced a serious crisis in needing to reduce its expenses and the resultant personnel decisions were a legitimate way of accomplishing that goal. We agree that these stated financial reasons provide a legitimate reason for the reductions in staff. Therefore, MEI has succeeded in proffering a nondiscriminatory basis for its personnel actions, including Ms. Bradfield's termination. To prevail on her age discrimination claim, Ms. Bradford must now attempt to demonstrate that the reasons offered by the MEI were in fact pretextual. *Everroad,* 604 F.3d 471; (*see also Egonmwan v. Cook County Sheriff's Dep't*, 602 F.3d 845, 850 (7th Cir.2010)).

In order to demonstrate pretext, Ms. Bradfield must show that MEI's reasons were false and that it did not actually believe its own stated reasons for terminating her. *Everroad*, 604 F.3d at 477 (*citing Gates v. Caterpillar, Inc.,* 513 F.3d 680, 690 (7th Cir. 2008)). That is to say, Ms. Bradfield must be able to establish that even MEI did not believe its own stated reasons, or, alternately, that a reasonable jury could conclude that the reasons cited by the Defendant were dishonest and the true underlying reasons were "based on prohibited discriminatory animus." *Benuzzi v. Board of Education of the City of Chicago, et. al.,* 647 F.3d 652 (7th Cir. 2011) (*citing McJowan v. Deere & Co.,* 581 F.3d 575 (7th Cir. 2000)). To this end, Ms. Bradfield's evidence must establish that either: (1)

the proffered reasons are not founded in fact; (2) the reasons provided by the defendant did not actually motivate the Defendant's personnel actions; or (3) the reasons provided are insufficient to motivate the actions. *Id.*

Ms. Bradfield's claim of pretext is based on her contention that the mini-RIF was simply a ruse to eliminate older staff, and that MEI's reasons for the mini-RIF were not founded in fact or were insufficient, taken as a whole, to merit the termination of multiple staff members. Ms. Bradfield outlines seven areas where MEI has shown that its fiscal reasons for the reduction in employees are unworthy of credence. Pl.'s Resp. at 11.

To illustrate the disingenuousness of Defendant's fiscal argument, Ms. Bradfield first notes that there were employees who were discharged prior to the time when MEI claims to have started its discussions about the need to reduce staffing levels, beginning in June 2012. *Id.* She identifies the following employees whom MEI terminated in 2012: "(1) Josef Senger, age 57[2], terminated on February 20, 2012; (2) Kathy Sutton, age 59, terminated on February 20, 2012; (3) Erik Hanson, age 48, terminated on May 30, 2012; (4) Jacob Harris, age 28, terminated on June 14, 2012; (5) Sarah Goines, age 37, terminated on July 26, 2012; (6) Michele Hobbs, age 41, terminated on July 26, 2012; (7) Amber Reuter, age 27, terminated on July 26, 2012; (8) Linda Cross, age 60, terminated on July 26, 2012; (9) James Rustman, age unknown, terminated on July 26, 2012; (10) herself—

---

2 The ages listed for each terminated individual are based on the age at the date of his or her termination.

14

Suezanne Bradfield, age 61, terminated on July 26, 2012; and (11) Marybelle Chandler, age 71, terminated on July 27, 2012. *Id.* Ms. Bradfield's theory in providing this list of the 2012 terminations is to cast doubt on MEI's claim of impending financial crisis at or about the time it let her go. Nevertheless, Ms. Bradfield maintains that the only employees who should be considered part of the mini-RIF are those who were terminated after June 2012, the date when the company claims to have begun a series of meetings with its leadership to decide which employees should be terminated from employment. *Id.*; Hall-Lima Dep. at 50-51. Only those employees who were eliminated from employment after these discussions commenced were part of the mini-RIF, to wit: (1) Sarah Goines, age 37; (2) Michele Hobbs, age 41; (3) Amber Reuter, age 27; (4) Linda Cross, age 60; (5) herself—Suezanne Bradfield, age 61; and (6) Marybelle Chandler, age 71. Pl.'s Resp. at 12. We disagree with this analysis. To consider only the terminations that occurred after formal meetings were conducted by MEI in June 2012 both obscures and discounts the fluid nature of such business decisions. As previously discussed, Ms. Hall-Lima recognized that problems were looming during the first quarter of the 2012 fiscal year. The fact that MEI included those employees who were terminated prior to June 2012 in its analysis is not, in and of itself, disingenuous or deceitful.

Ms. Bradfield's second argument posits that individuals outside the protected class were returned to work after July 2012. Of those discharged in 2012, Ms. Bradfield identifies three individuals who were brought back by MEI: (1) Sarah Goines, age 37;

15

(2) Michele Hobbs, age 41; (3) Amber Reuter, age 27; all of whom are outside ADEA's protections. *Id.* MEI responds that several others also returned to work based on their stated desire to resume working for MEI. As clients of MEI scheduled meetings and conferences, MEI asserts, more of the RIF'ed employees returned to their previous positions. That the majority of returning employees were younger does raise some concerns in analyzing MEI's proffered reasons, but not to a degree where that factor carries the day for Plaintiff, given her burden of persuasion[3].

Ms. Bradfield also notes that the company never did move its operations to Chicago, which was one of the reasons cited by MEI as not retaining Ms. Bradfield, to wit: "Ms. Rivera was not selected for termination in the reduction in force because she was hired for the Chicago office, which is where MEI was moving its operations. Hall-Lima Dep. at 87. Additionally, [Mr.] Lima is located in Chicago, and as a result, most of the operational accounting was already being transitioned to the Chicago office so he could oversee it as CFO." Def.'s Brief at 11. It is unclear from the record whether MEI's entire operation was to move to Chicago, as implied by Ms. Bradfield, or only the fiscal operations, since the CFO is based from Chicago. However, the fact that 90 of 120 employees remained in MEI's Evansville location does not erode the sincerity of MEI's plan to move some to

---

3 "'(T)he plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'" *Michas v. Health Cost Controls of Illinois, Inc.*, 209 F.3d 687, 694 (7th Cir. 2000) *citing Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

Chicago as a reason for the mini-RIF.   Moreover, the fact that one employee was retained at the time of the RIF to work from the Chicago office—Ms. Rivera—who was professionally comparable to Ms. Bradfield, provides some support for MEI's position that they were interested in moving staff to the Chicago office.   Even viewed in a light most favorable to Ms. Bradfield, we fail to see how the fact that most MEI employees remained in Evansville and were not transferred to Chicago could be reasonably construed as evidence of MEI's disingenuousness in stating fiscal reasons for the mini-RIF.

Similarly, Ms. Bradfield's arguments that:   (1) the overall personnel expense did not change significantly in 2012 and in 2013 the expense line for salaries greatly increased, (2) the company "knew" that the end of the year would be more profitable than the beginning of the year, (3) MEI decided to retain employees whose salaries represented a greater cost to the company than those terminated, and (4) the effect of federal legislation was greatly exaggerated, all call into question MEI's business judgments, which is beyond the scope of our inquiry here.   Plaintiff fails to demonstrate how these fiscal circumstances faced by MEI as the basis for its reduction in personnel are unworthy of credence.

At summary judgment, Plaintiff is not required to present every minute fact and detail, depicting all the possible evidence in support of her contentions.   However, she is required to sketch enough of an argument with supportive proof from which a jury could find in her favor on pretext.   Taken cumulatively, Ms. Bradfield has failed to offer

sufficient facts and information which would be persuasive to a reasonable jury considering her claim of pretext, specifically, or her claim of age discrimination, generally. As often reiterated by the Seventh Circuit, the Court does "not sit as a kind of 'super-personnel department' weighing the prudence of employment decisions made by firms charged with employment discrimination." *Wollenburg v. Comtech Mfg. Co.*, 201 F.3d 973, 976 (7th Cir.2000) (quoting *Giannopoulos v. Brach & Brock Confections, Inc.,* 109 F.3d 406, 410 (7th Cir.1997)). "On the issue of pretext, our only concern is the honesty of the employer's explanation." *O'Connor v. DePaul University*, 123 F.3d 665, 671 (7th Cir.1997); *O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975, 984 (7th Cir. 2001). Here, major gaps exist in Plaintiff's proof. The fact that some younger employees who were discharged as part of the RIF were recalled to their previous posts is, by itself, unpersuasive in Plaintiff's effort to prove pretext and Ms. Bradfield's claim of age discrimination cannot survive. Defendant's Motion for Summary Judgment is <u>GRANTED</u>.


**B.    Retaliation Claim:**

Ms. Bradfield's second cause of action is for retaliation by MEI for her having filed a discrimination claim. She alleges that comments made by CEO Ms. Hall-Lima constitute direct evidence of retaliation, entitling her to summary judgment on this claim. MEI counters that the Plaintiff has no evidence of any retaliation or retaliatory motive by those in hiring authority for MEI and, therefore, Defendant is entitled to summary

judgment.

The *McDonnell Douglas* burden-shifting test applies to Ms. Bradfield's retaliation claim just as it does with regard to her age discrimination claim. *Knox v. State of Indiana*, 93 F.3d 1327, 1333 (7th Cir.1996). In order to make out a *prima facie* case of retaliation using the direct method, a plaintiff must present sufficient evidence to establish that: (1) she engaged in statutorily-protected conduct; (2) she suffered an adverse employment action; and (3) there was a causal connection between the two. *Jones v. Res-Care, Inc.*, 613 F.3d 665, 671 (7th Cir. 2010) (citation omitted). Under the *McDonnell Douglas* framework, if MEI shows a legitimate, non-discriminatory reason for its refusal to rehire Ms. Bradfield, the burden shifts back to Ms. Bradfield to show pretext. As discussed *supra.,* the evidence presented on cross motions for summary judgment must be considered in the light most favorable to the respective non-movant. *Matsushita*, 475 U.S. 574.

It is well-settled that the filing of an EEOC charge is considered a statutorily protected activity for purposes of asserting an ADEA retaliation claim. (*See Smith v. Lafayette Bank & Trust Co.*, 674 F.3d 655, 658 (7th Cir. 2012); *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006); *Ajayi v. Aramark Bus. Servs.,* 336 F.3d 520, 533 (7th Cir. 2003) (holding there is "no dispute that (the plaintiff) satisfied the first element by filing her EEOC charge")). In filing her EEOC claim on August 27, 2012 (amended on August 12, 2014), Ms. Bradfield engaged in protected activity under the ADEA. MEI does not dispute that Ms. Bradfield has satisfied this first requirement, so

we move on to the remaining elements of the direct proof for an ADEA retaliation claim.

When considering whether an employee suffered an adverse action in the ADEA retaliation context, the standard used is identical to that in the Title VII context, to wit, whether a reasonable worker would be dissuaded from lodging a charge in the face of such action. (*See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 126 S. Ct. 2405 (2006): Actions constitute retaliation under Title VII if they could well "dissuade a reasonable worker from making or supporting a charge of discrimination."). Ms. Bradfield submits that other MEI employees were recalled to work once the company's financial forecast appeared brighter, but that she and another past employee, Ms. Marybelle Chandler, an individual also protected under ADEA, were not invited to return because they had filed charges against the company. Because MEI has not challenged this second prong of the direct method of proof, we accept Ms. Bradfield's contentions as true and turn to the third prong of causation.

During her deposition on May 19, 2014, Ms. Hall-Lima testified that several individuals had returned to employment with MEI: "I know that we called most of them back, with the exception of the two that filed suit. So I believe—I know—Sarah Goines had come back, Michele Hobbs is back, Amber Reuter is back. I guess that's why you're jumping over them. But I don't know if Linda Cross is back or not." Hall-Lima Dep. at 57. Ms. Hall-Lima also stated, "I would never call someone back to work that said I was—that filed a suit against me. Would you?" *Id.* at 86. MEI explains that, despite her

comments, Ms. Hall-Lima had no direct responsibility for hiring staff. Instead, according to MEI, she hired the leaders in each area and each of those managers had complete autonomy over the personnel in their functional areas. Def.'s Resp[4]. at 5. MEI further suggests that Ms. Bradfield's conclusions regarding Ms. Hall-Lima's involvement in hiring after July 2012 are purely "speculative." *Id.* Citing *Ripberger*, a case in which the Seventh Circuit made clear that a plaintiff must provide evidence beyond her own speculation that the person making the alleged direct comments had involvement in the hiring decisions. *Ripberger v. Corizon, Inc.,* 2014 U.S. App. LEXIS 23186 (7th Cir. December, 2014); *citing Dorsey v. Morgan Stanley*, 507 F.3d 624, 628 (7th Cir. 2007) (Evidence that an allegedly biased complex manager played any role in adverse decision made by regional manager was simply too speculative to establish involvement).

Defendant further argues that to prove a causal connection in the context of ADEA retaliation, the challenged act "must be a but-for cause of a materially adverse action, not merely a contributing factor.' *" See Barton v. Zimmer,* 662 F.3d 448, 455 (7th Cir. 2011). Def.'s Resp. at 5. MEI claims that Ms. Bradfield has no basis for her retaliation claim because she has not, to date, submitted her application for any positions available at MEI in contrast to other rehired employees and because her position has not been re-opened. Thus, MEI suggests the comments and actions of its CEO have not materially affected her

---

4 This refers to Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Partial Summary Judgment on Count II of the Amended Complaint.

employment prospects. We are urged to accept the argument that by not putting forth an application, she has failed to state a viable claim, and cannot be deemed to have suffered any injury due to Ms. Hall-Lima's comments. MEI also maintains that it is unnecessary for us to examine the question of whether the statement made by Ms. Hall-Lima would be sufficient to dissuade other similarly-situated individuals from lodging charges against MEI, given that Ms. Hall-Lima was not the person in charge of hiring.

We disagree that Ms. Bradfield's assertions are premised solely on her speculation; her claim reasonably invokes the comments made by a person whom both parties have characterized as a "hands-on" CEO. This constitutes proof of Ms. Hall-Lima's role in the personnel decisions on behalf of MEI, which fact is further corroborated given that she: (1) promoted Ms. Bradfield to the position of Assistant Vice President of Financial Services in 2008 (Def.'s Br. in Supp. of Part. Summ. J. at 5) and (2) said herself that she was directly involved in personnel meetings in 2012 (Hall-Lima Dep. at 50-51;). These facts are undisputed by MEI. Defendant's assertion that Ms. Hall-Lima may have been closely involved in personnel decisions prior to 2012, but not involved thereafter, creates a question of fact between the parties that must be resolved by a jury.

Finally, we turn to the issue of whether Plaintiff's retaliation claim fails on the basis of pretext. MEI asserts that the deposition provided by Jason McDowell, ("Mr. McDowell"), who led the finance team and made the hiring decisions for those employees, clearly shows that he had legitimate, non-discriminatory reasons for declining to recall Ms.

Bradfield. Def.'s Resp. at 6. Mr. McDowell stated that he had no interest in re-hiring Ms. Bradfield based on his previous negative experience in working with her. Mr. McDowell viewed Ms. Bradfield as a difficult employee who was inept in succeeding in a fast-paced team environment. Moreover, in his view, she declined to add proficiencies, such as a mastery of Access databases, to her skill set.

Ms. Bradfield counters that the view expressed so succinctly by Ms. Hall-Lima— that no one was welcome back who had sued her or her company—was MEI's *de facto* policy. Pl.'s Br. in Supp. of Part. Summ. J. at 18. Whether or not this characterization is true turns on issues of fact and assessments of credibility the Court is not authorized to resolve on summary judgment. We will leave those to the factfinder to sort out at trial. Therefore, Defendant's Motion for Partial Summary Judgment as to Plaintiff's retaliation claim must be and is <u>DENIED</u>.

Ms. Bradfield reciprocally argues that summary judgment should be decided on the retaliation claim in her favor. However, for the same reasons articulated above, these issues are not amenable to resolution by the Court on summary judgment. Thus Plaintiff's Motion for Summary Judgment on her retaliation claim must also be <u>DENIED</u>.

## CONCLUSION

For the reasons detailed above, MEI's Motion for Summary Judgment on Ms. Bradfield's original Complaint of Age Discrimination, filed on June 23, 2014 [Dkt. nos. 28, 29] is <u>GRANTED</u>; MEI's Motion for Partial Summary Judgment on Count II of Plaintiff's Amended Complaint, filed on November 07, 2014 [Dkt. nos. 54, 55] is <u>DENIED</u>; and Ms. Bradfield's Cross-Motion for Partial Summary Judgment on Count II of Plaintiff's Amended Complaint, filed on December 15, 2014 [Dkt. No. 57] is also <u>DENIED</u>. The case shall proceed accordingly.

IT IS SO ORDERED.

Date: _____03/31/2015_____

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Benjamin R. Aylsworth
BIESECKER DUTKANYCH & MACER LLC
baylsworth@bdlegal.com

Andrew Dutkanych, III
BIESECKER DUTKANYCH & MACER LLC
ad@bdlegal.com

Patrick A. Shoulders
ZIEMER STAYMAN WEITZEL & SHOULDERS
pshoulders@zsws.com

Wm. Michael Schiff
ZIEMER STAYMAN WEITZEL & SHOULDERS
MSchiff@zsws.com

Jean Marie Blanton
ZIEMER STAYMAN WEITZEL & SHOULDERS LLP
jblanton@zsws.com